## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | |
|---|---|
| ANDRE E. CUSHING III, et al. | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Docket no. 1:10-cv-330-GZS |
| | ) |
| WALTER F. MCKEE, et al., | ) |
| | ) |
| | ) |
| Defendants. | ) |

### ORDER ON MOTION FOR ATTORNEYS' FEES AND EXPENSES

Before the Court is Plaintiffs' Motion for Attorneys' Fees and Expenses (Docket # 69). As explained herein, the Court GRANTS IN PART and DENIES IN PART the Motion.

**I.      PROCEDURAL BACKGROUND**

Plaintiffs commenced this action by filing their Complaint (Docket # 1) on August 5, 2010. The Complaint contained five counts alleging that provisions of Maine law governing campaign finance – specifically, 21-A M.R.S.A. §§ 1015(1), 1019B(1)(B) & (3), and 1125(9) – violated the First and Fourteenth Amendments of the United States Constitution. Count I alleged that the independent expenditure reporting requirement, § 1019-B(1)(B) & (3), fails strict scrutiny. Count II alleged that the independent expenditure reporting requirements set forth in § 1019-B(1)(B) & (3) are overbroad. Count III alleged that the rescue funds provision in § 1125(9) unconstitutionally burdens and penalizes speech and fails strict scrutiny. Count IV alleged that the public funding scheme contribution limits in § 1015 fails intermediate scrutiny.

And, finally, Count VI alleged that the contribution limits in § 1015 were unconstitutionally low.[1]

Also on August 5, 2010, Plaintiffs filed a Motion for Preliminary Injunction (Docket # 4), seeking to preliminarily enjoin enforcement of the three challenged laws before the November 2, 2010 elections; a Motion to Consolidate (Docket # 5), seeking to combine their Preliminary Injunction with a trial on the merits under Fed. R. Civ. P. 65(a)(2); and a Motion to Expedite (Docket # 6), seeking to shorten State Defendants' response deadlines.

On August 27, 2010, the Court denied Plaintiffs' Motions to Consolidate and Expedite (see Docket # 21) on the grounds that the Court could not at that stage in the proceedings determine that there was no dispute as to the material facts and because of a need to conduct discovery. Four days later, on August 31, 2010, with their Preliminary Injunction pending, Plaintiffs filed a Motion for Temporary Restraining Order (Docket # 22), seeking to enjoin the issuance of any matching funds to political candidates. The Court denied Plaintiffs' Motions for TRO and Preliminary Injunction (Docket #s 31, 32) on September 15 and 17, 2010, respectively, concluding that Plaintiffs had no chance of success because the First Circuit's decision in Daggett v. Comm'n on Governmental Ethics & Election Practices, 205 F.3d 445 (1st Cir. 2000), had addressed – and rejected – the same arguments raised by Plaintiffs in the instant case.

With Maine's elections fast approaching, on September 20, 2010, Plaintiffs filed an appeal with the First Circuit and a Motion for a Preliminary Injunction Pending Appeal (Docket # 34) with this Court. Following this Court's denial of the Motion, Plaintiffs filed an emergency motion for injunctive relief pending appeal with the First Circuit, seeking relief before the November 2, 2010 elections in Maine. See Respect Maine PAC v. McKee, 622 F.3d 13, 14 (1st

---

[1] Plaintiffs' Complaint contained no Count V.

Cir. 2010). The First Circuit heard oral argument on Plaintiffs' emergency motion on October 5, 2010 and issued a denial the same day, concluding that the issues raised by Plaintiffs' challenge required "careful analysis" on "a fully developed record" and that Plaintiffs had not made a showing of immediate injury necessary for issuance of an emergency injunction. Id. at 15. The First Circuit further concluded that in weighing Plaintiffs' claims, it considered the "emergency" to be "largely one of [Plaintiffs'] own making" because they chose not to bring suit until August 5, 2010, "shortly before the November 2 elections," whereas Plaintiffs in Daggett filed their challenge almost two years ahead of the 2000 elections. Id. at 16 & n.3.

Undaunted, Plaintiffs pressed ahead, filing an Application for a Writ of Injunction with Justice Breyer on October 7, 2010 and, after its denial, a Renewed Application for a Writ of Injunction with Justice Kennedy. The Renewed Application was referred to the Supreme Court and denied on October 22, 2010. See Respect Maine PAC v. McKee, 131 S. Ct. 445 (2010) (Mem.). On October 29, 2010, the First Circuit affirmed this Court's denial of Plaintiffs' Motion for Preliminary Injunction.[2] As a result, on November 2, 2010, Maine's election proceeded unaffected by this case.

Ten days after the election, on November 12, 2010, Plaintiffs filed a Petition for Rehearing En Banc with the First Circuit. On November 29, 2010, the Supreme Court granted a writ of certiorari in McComish v. Bennett, --- U.S. ---, 131 S. Ct. 644 (2010) (Mem.),[3] which involved a challenge to a substantially similar matching funds provision under Arizona law. Accordingly, on November 30, 2010, Plaintiffs filed a Motion to Stay the First Circuit's

---

[2] The First Circuit denied preliminary injunctive relief for "essentially the same reasons alluded to in our order of October 5, 2010 denying an injunction pending appeal" and because "[w]e cannot say that the district court abused its discretion in denying preliminary injunctive relief." See Respect Maine PAC, 624 F.3d 23 (1st Cir. 2010).

[3] McComish v. Bennett was consolidated with Arizona Free Enterprise Club's Freedom Club PAC v. Bennett, --- U.S. ---, 131 S. Ct. 2806 (2011), and decided on June 27, 2011, see id.

3

consideration of their Petition for Rehearing En Banc. The First Circuit denied both the Petition for Rehearing and the Motion to Stay on December 2, 2010.

On December 22, 2010, the parties filed a Joint Motion for Stay of Proceedings (Docket # 56) asking the Court to stay all proceedings in connection with this action, including discovery,[4] pending the Supreme Court's decision in McComish v. Bennett. The Court granted the parties' motion the next day.

On June 27, 2011, the Supreme Court decided McComish v. Bennett via Arizona Free Enterprise Club's Freedom Club PAC v. Bennett, --- U.S. ---, 131 S. Ct. 2806 (2011), which ruled that Arizona's matching funds law violated the First Amendment. Following the Supreme Court's decision, the parties in this case filed a Stipulation Regarding Judgment on Count III (Docket # 64), declaring Maine's matching funds provision unconstitutional, and a Stipulation of Dismissal as to Counts I, II, IV, and VI (Docket # 63). On July 21, 2011, the Court issued an Order (Docket # 65), which ruled that the matching funds provision of Maine's Clean Election Act, 21-A M.R.S.A. § 1125(9), violated the First Amendment of the United States Constitution and therefore was unconstitutional. The Court entered judgment the same day. Plaintiffs' Motion for Attorneys' Fees and Expenses followed.

## II. LEGAL STANDARD

Under 42 U.S.C. § 1988, the Court awards "a reasonable attorney's fee as part of the costs" to "the prevailing party" in a case involving the vindication of civil rights. "Typically, achieving prevailing party status requires a plaintiff to show that he succeeded on an important issue in the case, thereby gaining at least some of the benefit he sought in bringing suit." Gay

---

[4] In addition, the parties asked that Plaintiffs be permitted to respond to Defendants' First Request for Production of Documents, dated November 1, 2010, and therefore not be subject to the Joint Motion.

4

Officers Action League v. Puerto Rico, 247 F.3d 288, 293 (1st Cir. 2001) (internal citations omitted). In other words, "a plaintiff 'prevails' when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." Id. (quoting Farrar v. Hobby, 506 U.S. 103, 111-12, (1992)).

As the Supreme Court recently (and unanimously) reiterated: "A civil rights plaintiff who obtains meaningful relief has corrected a violation of federal law and, in so doing, has vindicated Congress's statutory purposes. That result is what matters…." Fox v. Vice, -- U.S. --, 131 S. Ct. 2205, 2214 (2011) (internal citations and quotations omitted). Accordingly, "[a] court should compensate the plaintiff for the time his attorney reasonably spent in achieving the favorable outcome, even if the plaintiff failed to prevail on every contention." Id. (internal citation and quotation omitted). Even where a party has prevailed, however, a court may properly deny reasonable attorneys' fees to the prevailing party where "special circumstances would render such an award unjust." De Jesus Nazario v. Morris Rodriguez, 554 F.3d 196, 200 (1st Cir. 2009) (citing Hensley v. Eckerhart, 461 U.S. 424, 429 (1983)).

The calculus of what award the Court will approve initially requires that the Court determine the appropriate "lodestar," which is "the product of the number of hours appropriately worked times a reasonably hourly rate or rates." Hutchinson v. Patrick, 636 F.3d 1, 13 (1st Cir. 2011) (internal citations omitted). The party seeking the fee award, in this case, Plaintiffs, bears the burden of providing the Court with the materials necessary to construct the lodestar. See id. This includes the "burden of establishing the prevailing hourly rate (or schedule of rates) in the community for the performance of similar legal services by comparably credentialed counsel." Id. at 16 (internal citation omitted).

The Court "has the discretion to adjust the lodestar itself upwards or downwards based on several different factors, including the results obtained, and the time and labor required for the efficacious handling of the matter." De Jesus Nazario, 554 F.3d at 207 (citing Torres-Rivera v. O'Neill-Cancel, 524 F.3d 331, 336 (1st Cir. 2008)). Accordingly, the Court may eliminate hours billed that were "unreasonably, unnecessarily, or inefficiently devoted to the case," Torres-Rivera, 524 F.3d at 336, and discount time the Court considers "duplicative, unproductive, or excessive." Gay Officers Action League, 247 F.3d at 295.

Where a prevailing party achieves only limited success on his or her claims, the Court "may reduce the fee request to an amount that reasonably reflects that circumstance." United States v. One Star Class Sloop Sailboat Built in 1930 with Hull no. 721, Named "Flash II", 546 F.3d 26, 38 (1st Cir. 2008) (citing Hensley, 461 U.S. at 440). When a Court's fee adjustment is intended to reflect the success or failure of claims that are separate and distinct, the Court "may simply exclude time spent in litigating the unsuccessful claims." Id. at 39 (citing Coutin v. Young & Rubicam Puerto Rico, Inc., 124 F.3d 331, 338 (1st Cir. 1997)); see also De Jesus Nazario, 554 F.3d at 207 (1st Cir. 2009) ("subject to principles of interconnectedness, the trial court may disallow time spent litigating failed claims") (citing Lipsett v. Blanco, 975 F.2d 934, 940–41 (1st Cir. 1992)). Even when a party prevails on a particular claim, however, he or she is only entitled to recover fees for time productively spent – "time invested in issues that are litigated profligately, unnecessarily, or without benefit to the prevailing party may be disallowed." One Star Sloop, 546 F.3d at 39 (internal citations omitted). Finally, the Court notes that "[t]he essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection." See Fox, --- U.S. ---, 131 S. Ct. at 2216.

## III. DISCUSSION

In their Motion, filed September 19, 2011, Plaintiffs seek an award of $73,190.59 to cover their attorneys' fees and costs.[5] Plaintiffs' attorneys includes the law firm Bopp, Coleson & Bostrom, which has submitted invoices for fees and expenses totaling $66,608.00 and Plaintiffs' local counsel, David P. Crocker, who has submitted invoices totaling $6,582.59. Bopp, Coleson & Bostrom seeks compensation of $62,465.00 for 250.8 hours expended on behalf of Plaintiffs as well as $4,143.00 in expenses. Attorney Crocker seeks compensation of $6,531.00 for 31.1 hours expended on behalf of Plaintiffs as well as $51.59 in expenses.

State Defendants all but concede that Plaintiffs have met the definition of prevailing party under § 1988. By winning an enforceable judgment on Count III declaring that the matching funds provision of the Maine Clean Election law violates the First Amendment of the United State Constitution, Plaintiffs "succeeded on an important issue in the case, thereby gaining at least some of the benefit he sought in bringing suit." Gay Officers Action League, 247 F.3d at 293. Indeed, the "actual relief" awarded to Plaintiffs "materially alters the legal relationship between the parties by modifying [Defendants'] behavior in a way that directly benefits [Plaintiffs]." Id. Accordingly, Plaintiffs are properly considered a prevailing party under § 1988.

Nonetheless, State Defendants oppose Plaintiffs' request for attorneys' fees and costs and argue that Plaintiffs should receive no award because there are "special circumstances" in this case that would make an award of attorneys' fees unjust. See Torres-Rivera, 524 F.3d at 336. State Defendants cite the following "special circumstances": (1) Plaintiffs' numerous motions for injunctive relief all failed, and (2) Plaintiffs succeeded on Count III only after the Supreme

---

[5] Plaintiffs state that the total amount requested is subject to change for continuing work in support of their motion for attorneys' fees.

7

Court's decision in Arizona Free Enterprise Club's Freedom PAC v. Bennett, -- U.S. --, 131 S. Ct. 2806 (2011), when Plaintiffs and State Defendants entered into a stipulation that Maine's matching funds law violated the First Amendment. In short, State Defendants argue that the legal work of Plaintiffs' counsel did not contribute to Plaintiffs' status as the prevailing party – Plaintiffs simply rode the coattails of the legal work done in Arizona Free Enterprise Club's Freedom PAC and then entered into a stipulation granting Plaintiffs success on Count III. In the event that the Court awards attorneys' fees, State Defendants argue that the amount awarded should be reduced significantly below the $73,109.59 requested by Plaintiffs.

### A. Special Circumstances

The "special circumstances" warranting the complete denial of attorneys' fees "are narrowly circumscribed." De Jesus Nazario, 554 F.3d at 200. "As the Supreme Court has explained, the rationale for confining special circumstances to a tight encincture is that Congress meant to encourage [civil rights] lawsuits because of their public purpose." Id. (internal citations and quotations omitted). "[T]he burden is on the defendant to show that unusual conditions would make an award unjust or inappropriate." Id. (citing United States v. Cofield, 215 F.3d 164, 171 (1st Cir. 2000)).[6]

This case does not fit into the categories of cases satisfying the stringent criteria for special circumstances. See, e.g., Williams v. Hanover Hous. Auth., 113 F.3d 1294, 1301 (1st Cir. 1997) ("outrageous" or "inexcusable" conduct on the part of the plaintiff or its counsel during litigation of the case can sometimes constitute 'special circumstances' warranting denial of attorney's fees); Lewis v. Kendrick, 944 F.2d 949, 955-56 (1st Cir. 1991) (finding it

---

[6] Moreover, where a trial court determines that such "special circumstances" exist, it must support such a decision with particularized "findings of fact and conclusions of law identifying the special circumstances and explaining why an award would be inappropriate." De Jesus Nazario, 554 F.3d at 200 (citing Poy v. Boutselis, 352 F.3d 479, 488 (1st Cir. 2003)).

8

"inexcusable" that despite the fact that plaintiff had failed "entirely or largely in everything," her lawyers failed to adjust their billing accordingly); Stefan v. Laurenitis, 889 F.2d 363, 371 (1st Cir. 1989) (suggesting that "bad faith or obdurate conduct" might also constitute special circumstances warranting denial of attorney's fees).[7] State Defendants do not contend that Plaintiffs or their counsel engaged in outrageous or inexcusable conduct or acted in bad faith. As the First Circuit has made clear, "weaknesses in a plaintiff's case do not constitute a special circumstance (or an otherwise appropriate factor) warranting denial of an award of attorney's fees." Coutin, 124 F.3d at 341. At the very least, Plaintiffs negotiated and entered into a joint stipulation with State Defendants, which modified the relationship between the parties and achieved some of the benefit sought by Plaintiffs in bringing the suit. Accordingly, State Defendants have failed to meet their burden of showing that the unusual conditions of this case would make an award unjust or inappropriate.

### B. Determining the Lodestar

#### 1. Unsuccessful Motions

State Defendants contend that the Court should not award Plaintiffs attorneys' fees for time spent on Plaintiffs' unsuccessful efforts before multiple courts to preliminarily enjoin Maine election laws prior to the November 2010 elections. Plaintiffs counter that their efforts to

---

[7] Courts in other circuits "have held that one type of 'special circumstance' that creates an exception to the ordinary presumption in favor of granting attorneys' fees to a prevailing party is 'where, although plaintiffs received the benefits sought in the lawsuit, their efforts did not contribute to achieving those results.'" Donnell v. United States, 682 F.2d 240, 247-48 (D.C. Cir. 1982) (citing Connor v. Winter, 519 F. Supp. 1337, 1343 (S.D. Miss. 1981)). This holding is limited to cases involving intervenors who essentially just rode the coattails of another party, such as the United States Department of Justice, and contributed little or no work to the outcome of the case. This case is distinguishable because Plaintiffs here were the primary litigating parties and ultimately succeeded on one of their five claims.

9

preliminarily enjoin the matching funds law are compensable because they ultimately succeeded on their claim that Maine's matching funds law is unconstitutional.[8]

Given the dispute, a brief retrospection of the litigation that took place between August 5, 2010 (when Plaintiffs filed this case) and October 22, 2010 (when the Supreme Court denied the request for injunctive relief) is warranted:

Upon expedited review of Plaintiffs' request for immediate injunctive relief, the Court held that the First Circuit's decision in Daggett v. Commission on Governmental Ethics & Election Practices, 205 F.3d 445 (1st Cir. 2000), remained binding precedent and, therefore, concluded that "Plaintiffs have no chance of success on the merits." Cushing v. McKee, 738. F. Supp. 2d 146, 157 (D. Me. 2010). Believing that this Court's assessment of their likelihood of success was incorrect, Plaintiffs proceeded to press for injunctive relief prior to November 2, 2010 at the appeals court level. Upon an expedited appeal, the First Circuit described the issues raised in this lawsuit as "difficult" issues that "will require careful analysis, on a fully developed record." Respect Maine PAC v. McKee, 622 F.3d 13, 15 (1st Cir. 2010). The First Circuit further explained that they could not provide Plaintiffs emergency relief when "this 'emergency' is one of their own making." Id. at 16. At this juncture and having had no hearing on the merits, it was readily apparent that Plaintiffs' could not overturn Daggett prior to the November 2010 elections.

---

[8] Plaintiffs seek compensation for all of the time and expenses expended on interim motions, arguing that their "counsel should not be penalized for every lost motion." Lamphere v. Brown Univ., 610 F.2d 46, 47 (1st Cir. 1979). Plaintiffs assert that all of this time was "expended in pursuit of a successful resolution of the case in which fees are being claimed." National Assoc. of Concerned Veterans v. Secretary of Def., 675 F.2d 1319, 1335 (D.D.C. 1982). Plaintiffs' argument is misguided. Plaintiffs repeatedly failed in their efforts for a preliminary injunction and rather than succeeding on an appeal of the merits, Plaintiffs succeeded on Count III only because the Supreme Court's decision in a separate case, which was issued after the November 2010 elections and after Plaintiffs filed their bevy of motions (and appeals) seeking a preliminary injunction. Plaintiffs were not, as they contend, partially successful in their motions for preliminary injunction, temporary restraining order, emergency appeals, and filings with the Supreme Court; they were completely unsuccessful. Accordingly, the Court treats the hours devoted to these efforts, which were billed between July 16, 2010 and December 10, 2010, as severable from Plaintiffs' successful efforts following Arizona Free Enterprise Club's Freedom PAC.

Plaintiffs nonetheless proceeded to seek emergency relief from the Supreme Court, which denied Plaintiffs' application not because of the merits of Plaintiffs' First Amendment arguments, but because Plaintiffs requested "an injunction against enforcement of a presumptively constitutional state legislative act" – a request that "demands a significantly higher justification than a request for a stay, because unlike a stay, an injunction does not simply suspend judicial alteration of the status quo but grants judicial intervention that has been withheld by lower courts." Respect Maine PAC v. McKee, --- U.S. ---, 131 S. Ct. 445 (Mem.) (2010) (distinguishing the request from the stay request granted in McComish v. Bennett, 560 U.S. ---, 130 S. Ct. 3383 (2010)). The Supreme Court further noted the "difficulties in fashioning relief so close to the election" as an additional factor in denying Plaintiffs' request. Id.

As this review of the orders issued makes clear, Plaintiffs' emergency motions and appeals were unsuccessful and became increasingly unreasonable and inefficient. See Torres-Rivera, 524 F.3d at 336. While Plaintiffs are correct that they ultimately "won the war" with a finding that Maine's Clean Election law was unconstitutional in July 2011, they undeniably "lost the battle" over having the Maine Clean Election law applied to the November 2010 elections. This loss was not a "necessary step to [the] ultimate victory." Cf. Air Trans. Ass'n of Canada v. Fed. Aviation Admin., 156 F.3d 1329, 1335 (D.C. Cir. 1998) (quoting Cabrales v. County of Los Angeles, 935 F.2d 1050, 1053 (9th Cir. 1991)). Rather, this lost battle reflected the fact that Plaintiffs arrived on the battlefield too late and then engaged in an inefficacious handling of the matter. See id. In short, Plaintiffs chose to file this lawsuit just three months before Maine's November 2010 elections. This decision led Plaintiffs to bill numerous hours on emergency-style motions, which were unsuccessful as Maine's elections proceeded unaffected by Plaintiffs'

lawsuit. Under these circumstances, the fee award must reflect not only Plaintiffs' ultimate success on the matching funds claim but also Plaintiffs' lack of success on their bevy of emergency motions.

As the First Circuit has noted, where a plaintiff achieves only partial success, the district court "may simply exclude time spent in litigating the unsuccessful claims," "eliminate specific hours[,] or reduce the overall fee to account for the prevailing party's limited success." One Star Sloop, 546 F.3d at 39. Of the 282 hours for which they seek compensation, it appears Plaintiffs spent approximately 180.5 hours[9] on their failed attempts to obtain a preliminary injunction or temporary restraining order prior to the November 2, 2010 elections as well as on failed interlocutory appeals to the First Circuit and the Supreme Court. Having reviewed the bills in detail, the Court excludes fifty percent of the 172.0 hours expended by the attorneys at Bopp, Coleson & Bostrom related to Plaintiffs' efforts to achieve preliminary injunctive relief and fifty percent of the 8.5 hours billed by Attorney Crocker for work related to the First Circuit oral argument.[10] In the Court's assessment, this significant cut in hours strikes the appropriate balance between Plaintiffs' failure to obtain any injunctive relief prior to the November 2010 election and Plaintiffs' ultimate success in this case.

By eliminating fifty percent of the hours billed, the Court recognizes that Plaintiffs devoted a significant amount of time to an unnecessary and unproductive emergency of their own making. See Specialty Retailers, Inc. v. Main Street NA Parkade, LLC, 804 F. Supp. 2d 68, 75 (D. Mass. 2011) (finding that "Defendant is not entitled to fees for legal services expended on

---

[9] By reducing time billed for travel to the First Circuit oral argument from eighteen hours to nine hours, the Court has reduced the rate for travel to its customary half rate. See DeSena v. Lepage, --- F. Supp. 2d ---, No. 1:11-cv-117-GZS-DBH-BMS, 2012 WL 956013 (D. Me. March 21, 2012) (applying a half rate for travel).

[10] Because the Court deducts time based on Plaintiffs' unsuccessful motions, it declines to further deduct for Plaintiffs' partial success. Indeed, as Plaintiffs assert, such a deduction would amount to a double deduction.

its unsuccessful motion to dismiss" although Defendant ultimately succeeded at trial); see also One Star Sloop, 546 F.3d at 39 (concluding that a prevailing party "is only entitled to recover fees for time productively spent"); Rolland v. Cellucci, 151 F. Supp. 2d 145, 154 (D. Mass. 2001) ("An unsuccessful motion cannot be compensated."). Nonetheless, the Court also acknowledges Plaintiffs' ultimate success and that at some level the work done between September 17, 2010 and October 22, 2010 resulted from an arguable misapplication of stare decisis by this Court. See Cushing, 738 F. Supp. 2d at 155-56. Additionally, the Court acknowledges that this work contributed (albeit partially and indirectly) to the efficient handling of this matter between December 23, 2010 (when the Court approved the Joint Motion for Stay) and July 21, 2010 (when the Court directed that judgment enter in accordance with the parties stipulations).

### 2. Search for Plaintiffs and Local Counsel

State Defendants also contend that Maine's taxpayers should not be required to pay for any of the nearly ten hours that counsel billed while looking for potential plaintiffs and for local counsel. The Court agrees. Such time is properly considered excessive. See Torres-Rivera, 524 F.3d at 336. Having reviewed the billing entries in detail, the Court will deduct 7.8 hours listed by the Bopp, Coleson & Bostrom attorneys as time spent searching for potential plaintiffs and local counsel and one hour listed by Attorney Crocker as time spent searching for potential plaintiffs.

### 3. Staffing

State Defendants contend that the fee award should be reduced because Plaintiffs overstaffed this case. Ultimately, "[e]verything turns on the reasonableness of the staffing patterns employed and the overall time spent." Hutchinson v. Patrick, 636 F.3d 1, 14 (1st Cir.

2011). As Plaintiffs note, two of the five attorneys who worked on the case claim less than eighteen hours combined. While the Court is sensitive to potential overstaffing, it need not reduce Plaintiffs' billing records due solely to potential overstaffing. The Court examines Plaintiffs' billing records with an eye toward duplicative and unproductive hours and accounts for potential overstaffing in its consideration of other factors.

### 4. Press Releases and Media

"Reported federal cases are unanimous in denying awards of attorneys' fees for media-related time . . . ." See Parker v. Town of Swansea, 310 F. Supp. 2d 376, 393 (D. Mass. 2004) (quoting McLaughlin v. Boston School Committee, 976 F. Supp. 53, 72 (D. Mass. 1997)). State Defendants assert that the billing records of Plaintiffs' counsel established eight hours of time devoted to press releases, television interviews, radio appearances, and interviews with reporters. Having reviewed the relevant billing records in detail, the Court will deduct eight hours listed by the Bopp, Coleson & Bostrom attorneys and 6.4 hours listed by Attorney Crocker as time spent on press releases and media relations.

### 5. Discovery and Experts

The Court agrees with State Defendants' contention that Plaintiffs' discovery efforts in June and July 2011 – after the Supreme Court decided Arizona Free Enterprise Club's Freedom Club PAC – was excessive, redundant, and unnecessary. Indeed, the question of Maine's matching funds provision was no longer in dispute following the Supreme Court's decision. Having reviewed Plaintiffs' billing entries concerning the preparation of discovery responses following the Supreme Court's decision, the Court will deduct 12.2 hours listed by the Bopp, Coleson & Bostrom attorneys as time spent preparing discovery responses in June and July 2011.

14

Defendants also contest time billed for expert witnesses. Given that no expert testimony was submitted in this case, and given that the deadline for designation of experts had been extended by agreed-upon motion and then stayed, time billed for expert witnesses was excessive and unnecessary. See Torres-Rivera, 524 F.3d at 336. Having reviewed Plaintiffs' billing entries concerning expert witnesses, the Court will deduct 1.8 hours listed by the Bopp, Coleson & Bostrom attorneys as time spent regarding expert witnesses.

### 6. Hourly Rates

State Defendants ask that the rate for Attorneys Neeley, Woudenberg, and Troupis be lowered to $175 an hour, which State Defendants argue is the prevailing rate in Maine for a comparably credentialed attorney. Given that Attorneys Neeley and Woudenberg each had approximately six years of experience during this litigation and given that Attorney Troupis had approximately four years of experience during this litigation, the Court agrees. See DeSena v. Lepage, --- F. Supp. 2d ---, No. 1:11-cv-117-GZS-DBH-BMS, 2012 WL 956013 (D. Me. March 21, 2012) (applying the $175 hourly rate as the prevailing rate for Maine-based associates with approximately four years of experience); Nkihtaqmikon v. Bureau of Indian Affairs, 723 F. Supp. 2d 272, 284 (D. Me. 2010) (allowing an hourly rate of $225 for an attorney with ten years of experience and $175 for an associate with four years of experience); Spooner v. EEN, Inc., --- F. Supp. 2d ---, No. 08-cv-262-P-S, 2010 WL 4286358, at *2-3 (D. Me. Oct. 28, 2010) (allowing an hourly rate of $210 for an attorney with nine years of experience and $175 for an associate with five years of experience); Sullivan v. City of Augusta, 625 F. Supp. 2d 28, 43-44 (D. Me. 2009) (allowing an hourly rate of $200 for attorney with seven years of experience and up to $300 for an experienced and prominent civil rights attorney). Plaintiffs argue that the hourly rates for Attorneys Neeley, Woudenberg, and Troupis are not excessive, relying on the affidavit

of Maine attorney Timothy C. Woodcock (Docket # 69-7). The record before the Court simply does not establish that the associates staffed on this matter had sufficient specialized expertise to warrant the Court using the $250 rate requested by Plaintiffs. In short, having reviewed the work described in the billing records of Attorneys Neeley, Woudenberg, and Troupis, and information concerning their legal experience, the Court concludes that $175 per hour is an appropriate rate for these attorneys.

State Defendants have not challenged the hourly rates for Attorneys Bopp and Gallant. Based on the extensive legal experience of Attorneys Bopp and Gallant, the Court approves without objection hourly rates of $350 for Attorney Bopp and $300 for Attorney Gallant. State Defendants also challenge the $210 hourly rate for local counsel, Attorney Crocker. However, State Defendants provide no evidence to support their challenge. As a result, the Court will not alter Attorney Crocker's rate and concludes that on the record presented an hourly rate of $210 is appropriate for an attorney, such as Mr. Crocker, with more than twenty years of legal experience.

### 7. Reduction for Non-Core Tasks

State Defendants request that rates for non-core work, such as letter writing and phone calls, be reduced by one-third, and that the appropriate rate for preparing the Fee Motion is $150 per hour. Given that the Court has already reduced hours devoted to searching for potential plaintiffs and local counsel, press releases and media, and communications with experts, the Court is satisfied that it has eliminated the excessive or otherwise unnecessary time related to non-core work.

With respect to State Defendants' request that the appropriate rate for preparing the Fee Motion is $150 per hour, the Court agrees. See Torres-Rivera, 524 F.3d at 340 ("Because

litigating a fee petition is typically an uncomplicated exercise, fees for such work are often calculated at lower rates than those deemed reasonable for the main litigation."); Sullivan, 62 F. Supp. 2d at 48-49 (concluding "that $150 per hour is a reasonable rate for work on a fee request of this kind"). Having reviewed the billing records in detail, the Court credits Attorney Gallant with 14.4 hours and Attorney Crocker with 3.6 hours in preparing the fee motion at a rate of $150 per hour for each attorney.

### C. Other Costs

In addition to the requested fees, Plaintiffs seek additional costs totaling $4,194.59. While Defendants object to any award of costs, the Court will allow reasonable out-of-pocket expenses in conjunction with the fee award. See Palmigiano v. Garrahy, 707 F.2d 636, 637 (1st Cir. 1983); see also Hutchinson v. Patrick, 636 F.3d 1, 17 (1st Cir. 2011) (noting that costs may include a "broad range" of items, including "travel expenses, computer time and the like"). In this case, Defendants also press specific objections including: (1) the $500 in pro hac vice admission fees charged for five different lawyers from one firm, (2) the out-of pocket expenses associated with the First Circuit proceedings, and (3) the legal research done to support unsuccessful motions and appeals.

The first specific objection is well founded. It was unnecessary for the Plaintiffs to seek pro hac vice admissions for five attorneys in addition to being represented by local counsel. The Court will allow for reimbursement of one pro hac vice admission as part of reasonable costs and thereby deduct $400 from the requested costs. As to the second objection, the Court will allow out-of-pocket expenses associated with the unsuccessful First Circuit appeal.[11] As to the final

---

[11] These costs include: (1) $200 billed by Attorney Woudenberg for admission to the First Circuit on 8/30/2010, (2) $455 filing fee for the appeal charged on 9/20/2010, (3) $3.88 for good standing letter to accompany Attorney Woudenberg's First Circuit admission application billed on 9/21/2010, (4) $847.19 billed by Attorney Neeley for traveling to the First Circuit oral argument on 10/4/2010, (5) the 10/13/2010 FedEx charge for $101.09, (6) the

objection involving the costs of legal research, it appears that Plaintiffs seek reimbursement for a total Westlaw fee of $1,431.45. Having reviewed the entries, the Court has determined that the amounts billed for Westlaw research from September 21, 2010 through July 15, 2011 totals $836.55. In the Court's assessment, these amounts are readily attributable to time spent on unsuccessful motions and appeal. As a result, the Court applies a similar fifty percent reduction to these costs resulting in a reduction of $418.27 to the legal research costs. As a result, the Court will award limited reasonable costs of $3,376.32.

## IV. CONCLUSION

Plaintiffs' Motion for Attorneys' Fees and Costs (Docket # 69) is GRANTED IN PART and DENIED IN PART. Plaintiffs are hereby awarded attorneys' fees totaling $30,073.50 and costs totaling $ 3,376.32.[12]

SO ORDERED.

                                      /s/ George Z. Singal
                                      United States District Judge

Dated this 3rd day of April, 2012.

---

10/22/201 FedEx charge for $52.27 and (7) $51.59 billed by Attorney Crocker on 10/31/2010 in connection with his attendance of the First Circuit oral argument.

[12] Of the total fee award, the Court credits 135.4 hours billed by Attorneys Neeley, Woudenberg, and Troupis at $175 per hour; 1.0 hours billed by Attorney Bopp at $350 per hour; and 14.4 hours billed by Attorney Gallant at $150 per hour for a total award of $26,205.00. The Court also credits 15.85 hours billed by Attorney Crocker at $210 per hour and 3.6 hours billed at $150 per hour for a total award of $3,868.50.